**BISHMAN MANUFACTURING CO. and George T. Hemmeter, Plaintiffs,**

v.

**STEWART–WARNER CORPORATION, Defendant.**

No. 65 C 897.

United States District Court
N. D. Illinois, E. D.

Aug. 31, 1966.

---

Mason, Kolehmainen, Rathburn & Wyss, Walther E. Wyss, Chicago, Ill., Carlsen, Carlsen & Sturm, Andrew E. Carlsen, Minneapolis, Minn., for plaintiffs.

Dugald S. McDougall, Theodore R. Scott, McDougall, Hersh & Scott, A. G. Douvas, Chicago, Ill., for defendant.

### OPINION

WILL, District Judge.

This is an action for patent infringement in which defendant counter-claims for a royalty-free license based on what amounts to an alleged breach of promise of corporate marriage.

The facts as set forth in the Findings of Fact may be summarized as follows. Plaintiff, George T. Hemmeter (hereinafter also referred to as "Hemmeter"), is an inventor and prior to 1962 was the principal owner and president of the Hemmeter Corporation which, since 1952, had manufactured mechanical automobile wheel balancers.

Defendant, Stewart-Warner Corporation (hereinafter also referred to as "Stewart-Warner"), through its Alemite Instrument Division, prior to 1962 manufactured and sold an electronic wheel balancer which would indicate the light section of an unbalanced wheel but would not indicate the amount of corrective weight to be added as the mechanical balancers did.

In the fall of 1961, Hemmeter and representatives of defendant entered into discussions looking toward the acquisition of the former by the latter. Stewart-Warner was particularly interested in the latest model of the Hemmeter "Dial-O-Matic" and the several Hemmeter wheel balancer patents and patent applications, particularly Serial No. 700,773, which ultimately evolved into the patent in suit.

At Stewart-Warner's request, Hemmeter, on October 16, 1961, forwarded his file on the pending application to defendant with the understanding that it was submitted confidentially for "use in determining the value of the items offered for sale."

Having had no response by November 6, Hemmeter wrote defendant inquiring as to whether or not they were interested in acquiring his business. After some inconsequential communications defendant in mid-December sent four of its representatives to California to inspect the Hemmeter operation. On their return to Chicago the delegation reported that the latest Hemmeter balancer was "superior to competition."

On January 30, 1962, defendant by letter outlined two general alternative approaches which it might be willing to consider as a basis for the acquisition, but made it clear that the suggestions were "informal." Hemmeter replied immediately by letter dated January 31, indicating a preference for the second alternative but suggesting some modifications and the desirability of having preliminary papers prepared.

On February 15, at defendant's request, Hemmeter gave Stewart-Warner power to inspect his pending patent applications which power was filed with the Patent Office on February 28 by one of defendant's patent attorneys who examined the files.

On March 23, Hemmeter, not having heard from defendant, wrote observing that his "personal patent file has been in Stewart-Warner's possession since the latter part of October 1961." He pointed out that certain Patent Office due dates were "dangerously close" with much work remaining to be done. He also requested "a briefing on the progress of the written contracts."

Six days later, on March 29, defendant advised Hemmeter that one of its patent attorneys had discussed the key pending application with the patent examiner who was handling it and suggested that "this office prepare a draft of an amendment which should be filed" in the Patent Office before May 12. They observed that if the acquisition was effected prior to May 12, Stewart-Warner would file it directly. If not, then Hemmeter's patent counsel could consider the advisability of filing the amendment as prepared by defendant's patent department.

Hemmeter agreed to the suggestion on April 2 and on April 11, defendant sent him the proposed amendment which, as the covering letter indicated, contained "all new claims." These are the claims which were subsequently allowed and which defendant's patent counsel now urge are invalid although they expressed a contrary opinion in their letter of April 11.

Meanwhile, on April 3, 1962, defendant sent Hemmeter drafts of six proposed agreements which together were to constitute the contract of acquisition. The forwarding letter stated, however, that the drafts were sent only for Hemmeter's comments and cautioned that "None of the agreements should be either dated or signed at this time since this letter does not constitute a firm offer which can be accepted by you." Hemmeter turned the documents over to his general counsel and to his patent attorney who rendered written opinions dated April 17 and 18 respectively, both of which severely criticized the drafts.

Hemmeter sent the opinions to defendant with a covering letter on April 19 which expressed the hope that a "work-able agreement" might still be reached. Defendant did not reply to Hemmeter's April 19 letter until May 29. In the reply, defendant agreed to some modifications but referred to certain "important problems which still exist" and suggested these be re-referred to Hemmeter's attorneys for further consideration.

Between April 19 and May 29, Hemmeter entered into discussions with representatives of Bishman Manufacturing Co. (hereinafter also referred to as "Bishman"), the first contact taking place on May 12. Hemmeter gave Bishman an option on June 12, one month later. On June 13, Hemmeter advised Stewart-Warner of the option, and on July 11 informed defendant that the option had been exercised and he had sold his business, including the patents, to Bishman. Defendant, in a letter of July 24, acknowledged receipt of the information and the resultant termination of their negotiations, extended Hemmeter best wishes and invited him to bring to Stewart-Warner's attention any wheel-balancing ideas he might develop in the future.

On July 2, Hemmeter picked up from Associated Techdata Inc. of Palo Alto, California, the original vellum drawings of his latest model balancer which drawings had originally been ordered by Stewart-Warner because they desired more sophisticated drawings that those Hemmeter had been using in his manufacture of the balancer. A set of the Techdata drawings had been sent to defendant in April with the advice that the originals were being left "at Techdata pending your further instructions." No such instructions were ever given and, believing that Stewart-Warner no longer had any interest in them, Hemmeter picked up the drawings and turned them over to Bishman along with the other assets sold to them.

In 1962, after learning that Bishman had acquired Hemmeter, defendant instructed its Director of Engineering to design a balancer which would do the same things as the new Hemmeter balancer. While he had had no previous ex-

perience in designing wheel balancers, he had had some experience in evaluating various competing units. In addition, of course, he had one of the latest Hemmeter models, the drawings thereof which had been forwarded by Hemmeter in April, the full patent application file, the results of the patent search, which disclosed all outstanding patents in the field and the report of the Stewart-Warner delegation which had inspected Hemmeter's plant and observed his production techniques. Armed with this information, defendant's Chief Engineer developed the accused unit.

Plaintiffs contend that the patent in question is valid and that defendant's device infringes five of the claims allowed in the patent, i. e., claims 1, 4, 6, 7 and 12. Defendant, on the other hand, denies the validity of the claims in question or that its device infringes them and asserts that in any event the patent should not be enforced against defendant or, alternatively, defendant should be given a royalty-free license.

## A. VALIDITY

■■ Dealing first with the issue of validity, it is Hornbook patent law that a patent is presumed to be valid and that the burden of proving its invalidity rests on those challenging it. Defendant, in endeavoring to satisfy this burden, points to a number of earlier patents and asserts that Hemmeter did no more than combine previously known and patented elements which would have been obvious to anyone skilled in the art. As we have set forth in the Findings of Fact, claims 1, 6, 7 and 12 relied on by plaintiff add nothing to the prior art since the use of two indefinitely rotating counterweights in a balancer other than a wheel balancer was disclosed in Thearle patent '527, although Thearle accomplished the rotation by radially spacing the weights rather than by axially spacing them, an obvious equivalent alternative. Accordingly, we have found these claims invalid. Thearle, however, did not include a fixed counterweight with the result that the infinite rotation was useful only through 180 degrees.

Claim 4, on the other hand, admittedly describes a combination not theretofore known or used although defendant now contends anyone skilled in the art could have discovered it. It should be noted that this is contrary to the opinion of defendant's patent counsel at the time they prepared the amendment to the application.

The new combination described in claim 4 includes two infinitely rotating counterweights which rotate in opposite directions, plus a fixed counterweight. The resulting device, which defendant's representatives described as superior to competing balancers, permits easier and more accurate wheel balancing than was previously possible. The best evidence of this is defendant's evaluation, its interest in acquiring Hemmeter's business, patents and patent applications, and ultimately its development of a model which utilizes the same combination. Imitation by a competitor is not only the sincerest form of flattery but a touchstone of invention as well.

That it was not obvious to persons skilled in the art is apparent from the fact that although plaintiffs and defendant are only three of a number of wheel balancer manufacturers, none of them, including defendant, had discovered the combination and its superior performance until Hemmeter developed it.

■ It follows from the foregoing that claim 4 sets forth a combination which is a substantial advance over the prior art and which was not apparent to persons skilled in the art. In short, it represents invention and claim 4 is valid.

## B. INFRINGEMENT

Defendant concedes that its accused device was developed to accomplish the same results as Hemmeter's latest model and that all its elements except one are the same as those of that model. It contends, however, that its use of radially spaced infinitely counter rotating weights, one of which is journaled to a

sleeve mounted on the arm which supports the other weight, avoids infringement of claim 4 which specifies that the counterweights are mounted for rotation in axially spaced planes and individually journaled for rotation with respect to the hub about the hub's axis.

We have previously held that claims 1, 6, 7 and 12 are invalid in that the axial spacing and individual journalling are the equivalent of the radially spaced weights of the Thearle patent. Defendant has simply adapted the Thearle mechanism for permitting the weights to rotate past each other in opposite directions. If plaintiffs' device for permitting the weights so to rotate is the mechanical equivalent of Thearle, as we have found, then it follows that defendant's arrangement which is copied from Thearle is an equivalent of plaintiffs' device. Hemmeter's invention consists not of devising a method by which weights can counter rotate infinitely, but in combining such weights with a fixed weight to achieve a superior wheel-balancing device. Defendant's accused device employs precisely this combination though its method of rotating the counter-weights is that employed in Thearle.

It follows then that defendant's accused device infringes claim 4 of the patent in issue.

### C. DEFENDANT'S COUNTERCLAIM

Defendant urges that Hemmeter's conduct in his dealings with Stewart-Warner and his subsequent sale of his business to Bishman raise equitable grounds either for denying enforcement of the patent against defendant or awarding defendant a royalty-free license.

We conclude that Hemmeter acted fairly and reasonably under all the circumstances. He negotiated and discussed the sale of his business to defendant for approximately eight months, disclosed all the information which Stewart-Warner requested and frequently urged action to bring the transaction to a conclusion. At the end of that time, he was sent drafts to six defendants which his counsel found unsatisfactory. He communicated their objections to defendant who took no further action thereon for forty days although its patent counsel were proceeding to secure the issuance of a patent. Finally, he concluded, not unreasonably, that he should not put all his eggs in the Stewart-Warner basket and entered into negotiations with Bishman. While defendant was apparently waiting to ascertain the value of the dowry which the bride would bring to the corporate marriage, she understandably concluded that there was a serious possibility of being jilted and found another suitor less cautious.

This hardly constitutes fraud, bad faith or other equitable grounds for denying enforcement of the patent against defendant or awarding it a royalty-free license. Defendant took a calculated business risk in the handling of the negotiations and in equity cannot now be heard to complain when somebody else "made the deal." Defendant carefully and definitely made it clear that it was not entering into a binding contract to purchase Hemmeter's business while at the same time volunteering to prepare an amended patent application which had been completed and filed before the Bishman negotiations commenced.

### D. CONCLUSION

We conclude that claims 1, 6, 7 and 12 of the Hemmeter patent in issue are invalid, that claim 4 is valid, that defendant's accused device infringes that claim, and that Hemmeter's conduct was not such as to warrant equitable relief to defendant. Plaintiff is entitled to a judgment consistent with these conclusions providing for appropriate money damages and an injunction against further infringement.